UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                           :

UNITED STATES OF AMERICA       :

             - v. -                          :        07 Cr. 485 (HB)

**KEVIN BROWN,**                    :

        Defendant.               :

-------------------------------------------------------x

      **PLEASE TAKE NOTICE** that upon the annexed motion and memorandum of law, and the exhibits attached thereto, the defendant herein, **KEVIN BROWN**, will move this Court, before the **HONORABLE HAROLD BAER, JR.,** United States District Judge for the Southern District of New York, at the United States Courthouse located at 500 Pearl Street, New York, New York, at a time to be designated by the Court, for an Order, pursuant to the Commerce Clause, Due Process Clause and Tenth Amendment of the United States Constitution, dismissing the Information, and granting such other and further relief as the Court deems just and proper.

      Dated: New York, New York
              August 7, 2007

                                                          Respectfully submitted,
                                                          LEONARD F. JOY, ESQ.
                                                          Federal Defenders of New York

                                 By:   _____
                                                           **CHRISTOPHER A. FLOOD, ESQ.**
                                                          Attorney for Defendant
                                                         **KEVIN BROWN**
                                                         52 Duane Street - 10th Floor
                                                          New York, New York 10007


TO:    **MICHAEL J. GARCIA, ESQ.**
         United States Attorney
         Southern District of New York
         One St. Andrew's Plaza
         New York, New York 10007
         Attn:  **JENNA DABBS, ESQ.**
                     Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
              :
UNITED STATES OF AMERICA  :
              :
        - v. -            :    07 Cr. 485 (HB)
              :
KEVIN BROWN,              :
              :
        Defendant.        :
              :
-------------------------------------------------------x


### DEFENDANT KEVIN BROWN'S MOTION AND MEMORANDUM
### IN SUPPORT THEREOF TO DISMISS THE INFORMATION

    This Memorandum of Law is respectfully submitted on behalf of defendant KEVIN BROWN in support of his motion to dismiss the Information. Mr. Brown is charged with violating 42 U.S.C. §§ 14072 (g)(3) and (i)(1) of the Pam Lychner Sexual Offender Tracking and Identification Act of 1996 ("the Act"). This statute makes it a crime for a person required to register under a state sexual offender registration program, who changes his or her residence to another state, to knowingly fail to register within ten days with both the FBI and the state in which the new residence is established. Mr. Brown has entered a plea of not guilty to the Information.

## STATEMENT OF FACTS

    On December 22, 2005, as required by New Jersey law, Mr. Brown registered with the New Jersey Sex Offender Registry. The government alleges that Mr. Brown then relocated to New York and established a residence in this state. The government also alleges that Mr. Brown "did not notify the authorities in New Jersey or New York, or the FBI, or otherwise take steps to update his required registration." See, Information, attached as Exhibit A.

## Pam Lychner Sexual Offender Tracking and Identification Act of 1996

    Although Mr. Brown is one of the very first people charged under the Act, it has been in effect for over ten years, having been signed into law on October 3, 1996. Aside from establishing criminal penalties, the Act directs the Attorney General to establish a national database at the FBI to track the whereabouts and movements of "(1) each person who has been convicted of a criminal offense against a victim who is a minor; (2) each person who has been

convicted of a sexually violent offense; and (3) each person who is a sexually violent predator." 42 U.S.C. § 14072 (b).[1]

The Act further imposes federal registration requirements on people convicted of entirely local offenses. Specifically, the Act requires people subject to registration requirements in any state, who change address from one state to another, to register within 10 days with both the FBI and their new state of residence. See, 42 U.S.C. § 14072 (g) (3). These persons must provide a current address, fingerprints, and a photograph for inclusion in both the FBI and state databases. The Act provides that individuals who knowingly fail to comply with the Act's registration requirements are subject to imprisonment of not more than one year for a first offense or not more than 10 years for a second or subsequent offense. The Act also directs state agencies notified of a change of address by a person subject to registration to notify law enforcement officials of the person's original jurisdiction, of the person's new jurisdiction, as well as the FBI. 42 U.S.C. § 14072 (g) (4).

## SUMMARY OF ARGUMENT

The Act is unconstitutional and the Information must be dismissed. First, Congress lacks the power under the Commerce Clause to require citizens who have been convicted of purely local offenses under state law to register as sex offenders. The individual registration requirement, contained in 42 U.S.C. § 14072 (g) (3), is therefore unconstitutional. Even if Congress has the authority to impose the individual registration requirement, the Act violates the Commerce Clause because Congress lacks the power to federally criminalize a local sex offender's failure to register in a state-run registry. Unlike the Sex Offender Registration and Notification Act (SORNA), which contains jurisdictional language in its text – the defendant must travel in interstate commerce – the Act contains no jurisdictional language within its plain reading. Therefore, the Act violates the Commerce Clause and the Information must be dismissed.

Second, the Information must be dismissed because the prosecution of Mr. Brown under the Act violates his right to due process. Failure to register under 42 U.S.C. § 14072 is a specific intent crime. Because the Act does not establish a reliable mechanism for providing specific notice of his obligation to register under the Act, Mr. Brown cannot be said to have knowingly failed to comply with the Act. Therefore his prosecution is barred on due process grounds.

Third, the Act is an unconstitutional exercise of federal power over the states and therefore violates the Tenth Amendment. The Act requires individuals to register in state-run sex offender registries, and it forces state officials to assist in administering federal law, both of which are prohibited by the Tenth Amendment and the principles of federalism. The statute is

---

[1] The terms "criminal offense against a victim who is a minor," "sexually violent offense," and "sexually violent predator" have the same meaning as in the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act. See 42 U.S.C. § 14071 (a) (3).

therefore unconstitutional and the Information must be dismissed.

**ARGUMENT**

**CONGRESS LACKS THE POWER TO FORCE INDIVIDUALS CONVICTED OF PURELY LOCAL OFFENSES TO REGISTER WITH A STATE DATABASE**

The Act requires people subject to registration requirements within a state, who change residence to a different state, to register with the sex offender database in "the State in which the new residence is established." Failure to do so within 10 days results in exposure to federal criminal penalties. Congress lacks the authority to direct individuals convicted of purely local offenses to register in a state criminal database. Those subject to the terms of the Act include citizens, like Mr. Brown, who have been convicted solely under state criminal laws and whose offense has no relation to interstate activity or commerce.

Congress may only enact legislation pursuant to the powers specifically delegated to it by the Constitution. See United States v. Lopez, 514 U.S. 549, 552 (1995). The only power through which Congress could conceivably enact it is the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. Art. I § 8, cl. 3. However, under modern Commerce Clause jurisprudence, as articulated in United States v. Lopez, 514 U.S. 549 (1995), United States v. Morrison, 529 U.S. 598 (2000), and United States v. Jones, 529 U.S. 848 (2000), Congress does not have the power to impose the Act's individual registration requirement on people convicted of purely local offenses.

Congress may regulate "three broad categories of activity ... under its commerce power.'" 529 U.S. at 608-609, quoting Lopez, 514 U.S. at 558. First, Congress may regulate the use of the channels of interstate commerce, such as interstate highways, the mail or air traffic routes. Id. Second, Congress may regulate and protect the instrumentalities of interstate commerce or persons or things in interstate commerce. Id. Finally, Congress may regulate those activities that have a substantial effect on interstate commerce. Id.

The Act's individual registration requirement cannot be construed as being related to either the channels or the instrumentalities of interstate commerce. Therefore, the individual registration requirement can only be upheld if it regulates "persons or things in interstate commerce" or "those activities that substantially affect interstate commerce." Lopez, 514 U.S., at 558-559. Applying the factors set forth in Lopez and Morrison, the Act exceeds the reach of Congress' commerce power. The Act is unconstitutional because it seeks to criminalize activity that is not itself of an economic character, because there is an insufficient nexus between the criminalized activity and interstate travel, because Congress has made no findings to show that the criminalized activity is related in any way to interstate commerce, and because the criminalized activity is in fact not related to interstate commerce.

*The Act Criminalizes Non-Economic Activity*

Registration with a criminal database is not an economic activity.[2] Registration is not a commodity. It is not produced, distributed, or consumed. There is no profit, market, or cost in registration. It is purely an act of compliance with local law, as non-economic as assault or trespass. Even where the interests of law enforcement may be strong, the Commerce Clause cannot be invoked to uphold legislation that criminalizes non-economic activity. For example, in Lopez, the Gun-Free School Zones Act was struck down in part because "neither the actors nor their conduct ha[d] a commercial character, and neither the purposes nor the design of the statute ha[d] an evident commercial nexus." 210 at U.S. 559-560. Here, law enforcement is both the stated purpose and clear design of the Act: "to protect the public safety by establishing a nationwide system to track convicted sexual predators." See 142 Cong. Rec. S8777 (1996). As in Lopez, the Act must be struck down.

*The Act Sets Forth No Jurisdictional Basis in its Text and There is No Nexus Between the Criminalized Activity and Interstate Travel*

Looking to the language of the statute itself, there is no "jurisdictional element," such as a requirement of travel across state lines for the purposes of committing the criminalized act. See Morrison, 529 U.S. at 611-612. Conversely, as will be discussed below, SORNA has been recently upheld as a valid exercise of Congress' commerce power because it contains a specific jurisdictional element prohibiting sex offenders to "travel in interstate commerce" without registering. See 18 U.S.C. § 2250 and 42 U.S.C. § 14072.

---

[2] The Supreme Court's most recent Commerce Clause case, Gonzales v. Raich, 545 U.S. 1 (2005) clarifies the meaning of the term "economic." In Raich, the Court held that the application of the Controlled Substances Act ("CSA") provision criminalizing the distribution and possession of medical marijuana was legally enacted under the Commerce Clause, even if the marijuana was locally grown, consumed locally, and never traveled in interstate commerce. The Court held that because marijuana is a commodity that has an interstate market, the CSA is connected to "economic" activity and is therefore a valid exercise of Congress' Commerce Clause powers:

> [u]nlike those at issue in *Lopez* and *Morrison* the activities regulated by the CSA are quintessentially economic. "Economics" refers to "the production, distribution, and consumption of commodities." Webster's Third New International Dictionary 720 (1966). The CSA is a statute that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market. Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product.

Raich, 545 U.S. at 25-26.

Clearly this reasoning has no application to 42 U.S.C. § 14072, which in no way regulates anything resembling commercial activity. The Act, whose purpose is "to protect the public safety by establishing a nationwide system to track convicted sexual predators," 142 Cong. Rec. S8777 (1996), far more closely resembles the statutes at issue in Lopez and Morrison.

The absence of this jurisdictional language in the Act belies its importance to the constitutional analysis. Where such language is present, the government in any prosecution must prove jurisdiction to the finder of fact. As with every element of a criminal offense, the burden rests with the government and jurisdiction must be proven beyond a reasonable doubt. Where Congress is criminalizing local activity, requiring proof beyond a reasonable doubt of federal jurisdiction acts to limit the reach of federal power, filtering out those cases that do not implicate federal interests from those which truly do. Moreover, proving jurisdiction to the finder of fact appropriately focuses each criminal prosecution on the facts of the given case.

Where no such jurisdictional element is present in the text, the risk arises that criminal cases become federal as a matter of political expediency. Furthermore, it is exactly this type of case, involving convicted sex offenders, where the ordinary legislative process of debate and factfinding breaks down. Far from receiving greater scrutiny and care in Congress, making new federal crimes out of purely local registration offenses receives surprisingly weak treatment on the debating floor. Few congresspersons could or would risk the perception of being "soft" on sex offenders by debating the merits of a criminal statute. Indeed, every incentive runs in the opposite direction. Here, predictably, the congressional record underlying the Act reflects virtually no debate. See 142 Cong.Rec. S8777-S8781 (1996); 142 Cong.Rec. H11130-H11135 (1996). With the slight treatment given to this issue by Congress, it is not surprising that the Act is facially deficient of a jurisdictional element.

Furthermore, the interstate movement referenced in 42 U.S.C. § 14072 (g) (3) is not linked to any form of intent, to commit any crime or otherwise, and certainly not to avoid registration requirements. In order for a criminal statute to fall under the second Lopez category, which regulates people or things in interstate commerce, the interstate travel must be related to the misconduct itself. In other words, there must be a nexus between the activity and interstate travel. Here, Mr. Brown is charged with moving to New York, and afterwards failing to register with New York. Mr. Brown is *not* accused of traveling between New Jersey and New York with the intent to avoid reporting requirements. In essence, he is accused of committing a New York offense after having moved to New York. This is not a basis for federal jurisdiction.

Congress addresses the Act's failings in this area in SORNA, its most recent attempt to criminalize registration offenses. Indeed, SORNA has been upheld by a number of District Courts because the text of the statute sets forth a jurisdictional element, and because the nexus between interstate travel and intent is clarified in that statute. In United States v. Mason, 2007 WL 1521515 (M.D. Fla., May 22, 2007), the District Court dismissed the defendant's Commerce Clause challenge to SORNA because that act "imposes registration requirements on convicted sex offenders who travel in interstate commerce. Thus, the statute has a jurisdictional nexus." Mason at *7 (emphasis added).

Similarly, the District Court in United States v. Hinen, 487 F. Supp. 2d 747 (W.D. Va. 2007) noted that after Lopez and Morrison, "the standards are more demanding regarding when Congress can intrude on an area that is not purely 'commercial' and that has been traditionally

-5-

regulated by the states." Hinen, 487 F. Supp. 2d at 757. The Court then stated that while the statutes at issue in Lopez and Morrison indirectly regulated interstate commerce, SORNA's jurisdictional language - that the defendant must travel in interstate commerce - directly ties SORNA to the federal power to regulate interstate commerce: "The jurisdictional element involved in [SORNA] both distinguishes it from the statutes at issue in *Lopez* and *Morrison* and satisfies the requirements of the Commerce Clause." Id.

The District Court in United States v. Templeton, 2007 WL445481 at *4 (W.D.Okla., Feb. 7, 2007), held that SORNA was valid under the Commerce Clause simply because "the statute includes a jurisdictional nexus."

In all but United States v. Madera, 474 F.Supp.2d 1257 (M.D.Fl. Jan. 16, 2007), reviewing courts have found SORNA's jurisdictional language, and the textual link that statute makes between the regulated activity and interstate travel, satisfies the Commerce Clause analysis. In Madera, the District Court also found SORNA to be justified under the Commerce Clause, but conducted a cursory and flawed analysis to reach that result. Fundamentally misconstruing the Lopez test, the court cited Congress' rational basis in protecting public safety to satisfy the Commerce Clause concerns. Id. Of course, if public safety concerns were sufficient to satisfy the Commerce Clause, then neither Lopez nor Morrison would have been correctly decided. Notwithstanding Madera, the movement and "tracking" of people subject to registration requirements is neither inherently economic, nor is the regulated activity linked by the text of the Act to any basis for federal jurisdiction.

### *Congress Made No Findings to Show that the Regulated Activity Substantially Affects Interstate Commerce*

Congress can bolster its position that an activity is substantially related to interstate commerce by making specific findings. Where Congress makes such findings to support its exercise of power under the Commerce Clause, courts may "evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce." Lopez, 514 U.S. at 563. Here, the record is bereft of any such findings. Like the Gun-Free School Zones Act, the Act is utterly unsupported, without a single legislative finding to justify the exercise of power under the Commerce Clause.[3] The faith this Court should have in Congress' own consideration of its authority under the Commerce Clause, and the deference this Court should give that determination, should be no greater than the amount of consideration Congress itself has given to the issue. Where, as here, there is no debate on this issue whatsoever, that deference may appropriately be minimal.

---

[3] Even the existence of legislative findings does not guarantee that the statute will be upheld as a valid exercise of Congressional power. The Violence Against Women Act, at issue in Morrison, was accompanied by "numerous findings regarding the serious impact that gender-motivated violence has on victims and their families." Morrison, 529 U.S. at 614. The Court still struck down the statute, holding that "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation." Id. Rather, the Court held that the determination of whether an activity sufficiently affects interstate commerce is for the judiciary. Id.

*The Criminalized Activity Does Not Substantially Affect Interstate Commerce*

Finally, courts may separately examine the effect of the regulated activity on interstate commerce. Morrison, 529 U.S. at 612. As an initial matter, no such effect can here be hypothesized by the aggregate economic effects that sex crimes and sex offenders inflict upon society. The Supreme Court has flatly rejected the notion that the aggregate effect on interstate commerce of local criminal activity can be used to justify the invocation of Congress' Commerce Clause power. Morrison, 529 U.S. at 617. Nor can the costs of crime control or the effects of crime on "national productivity" support the use of the Commerce Clause to regulate intrastate criminal activity. Lopez, 514 U.S. at 564; Morrison, 529 U.S. at 598, 612-613.

In Morrison, the Court clarified the difference between public safety interests and economic activity. "[W]here [the Court has] sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." 529 U.S. at 611. After subjecting the Violence Against Women Act to this standard, the Morrison Court held that "[g]ender motivated crimes of violence are not, in any sense of the phrase, economic activity." Id. at 613. Similarly, in Lopez, the Court held that the Gun-Free School Zones Act, "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." Lopez, 514 U.S. at 561. Purely local offenses relating to the failure to register are similarly non-economic and, while validly regulated by the states, are not subject to regulation by Congress under the Commerce Clause.

## THE INFORMATION MUST BE DISMISSED BECAUSE THE ACT VIOLATES DUE PROCESS

The Due Process Clause of the Fifth Amendment of the United States Constitution encompasses principles of notice, fair warning, and forseeability, particularly in the context of criminal penalties. Rogers v. Tennessee, 532 U.S. 451, 460 (2001). In Lambert v. California, 355 U.S. 225 (1958), the Supreme Court invalidated, under the Due Process Clause, a prosecution for failing to register as a felon, as required by a city ordinance, because the defendant had no knowledge or notice of the statute requiring registration. The Court held that "[e]ngrained in our concept of due process is the requirement of notice… Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act." Id. at 243. The Act does not promulgate a means by which, in practical terms, people subject to its provisions may be notified of its requirements or even existence.

Moreover, there appears to have been no actual notice in this case. While Mr. Brown signed several New Jersey Department of Corrections documents putting him on notice of New Jersey law as part of his registration requirements, the government has provided no documentation of any notice to Mr. Brown as to the requirements of the Act. See, Acknowledgment of Duties of Address Verification and Registration, State of New Jersey

Department of Corrections, attached as Exhibit B. Notably, even the acknowledgment required by the Camden County Prosecutor fails to mention the Act or any of its provisions. <u>Acknowledgement of Duties of Address Verification and Re-Registration</u>, Camden County Office of the Prosecutor, attached as Exhibit C. The absence of notice of ostensibly applicable federal law in the prosecutor's own acknowledgment is telling. While the Act had been on the books since 1996, it had not been used to prosecute anyone until after the passage of SORNA on July 27, 2006. The Camden County Prosecutor's acknowledgment was revised five months before that date, on February 28, 2006. At the time the acknowledgment was drafted, it appears that not even the local prosecutor was aware of the presence of the Act. Under these circumstances, it would be unfair to apply the Act to Mr. Brown.

## THE ACT IMPERMISSIBLY ENCROACHES UPON STATE POWER AND THEREFORE VIOLATES THE TENTH AMENDMENT.

The Act, which imposes a federal obligation on offenders to register in individual state-created and state-run sex offense registries, is an unconstitutional encroachment of federal power on state sovereignty. The State registration requirement, at 42 U.S.C. § 14072 (g) (4), requires states to cooperate with the establishment of such a database by notifying the FBI, as well as law enforcement officers of another jurisdiction, when a sex offender changes residence from one state to another. This requirement forces state officials who run local registries to assist with the administration of federal law, which is prohibited by the Tenth Amendment.

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., amend. X. The Tenth Amendment has been applied to uphold the principles of federalism by limiting the power the federal government may exercise over state activities. For example, the Tenth Amendment prohibits the federal government from commandeering state officials into enacting or administering federal law. <u>Printz v. United States</u>, 521 U.S. 898, 935 (1997). Both the individual the State registration requirements are unconstitutional encroachments on state power by the federal government: the former, because it creates a federal obligation for those convicted of state crimes to register with state-run agencies, and the latter, because it requires states to assist in administering a federal law.

In <u>Printz</u>, the Supreme Court struck down a law requiring local law enforcement officials to conduct background checks of prospective handgun purchasers. The Court held, "[t]he Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." 521 U.S. at 935; <u>see</u> also <u>New York v. United States</u>, 505 U.S. 144 (1992) (Congress did not have the power to compel the states to enact a federal program regulating the disposal of toxic waste). The local law enforcement officials in <u>Printz</u> are analogous to the law enforcement officials who run state sex offender registries. Just as Congress has no power to compel local law enforcement to conduct federally mandated

-8-

background checks, it has no power to compel local law enforcement to help administer federal law, as commanded by the Act. In United States v. Snyder, 852 F.2d 471, 475 (9th Cir. 1988), a case concerning federal interference with state drivers' licensing laws, the Court stated that "the federal government has no constitutional authority to interfere with a state's exercise of its police power except to the extent the state's action intrudes on any of the spheres in which the federal government itself enjoys the power to regulate." Because, the federal government does not have the power to regulate local sex offender registries, the Act is invalid under the Tenth Amendment and the Information must be dismissed.

## CONCLUSION

The Information must be dismissed for several reasons. First, Congress does not have the power under the Commerce Clause to compel individuals convicted of local crimes to comply with state registration requirements. Second, Congress does not have the power under the Commerce Clause to criminalize a local offender's failure to register with a state registry. Third, the prosecution of Mr. Brown for committing a specific intent crime under an act of which he had no specific notice, is a violation of his due process rights. Finally, The Act forces state law enforcement officials to assist in the administration of federal law and creates a federal obligation for local offenders to register in state-run registries, both of which violate the Tenth Amendment. For all these reasons, the Information against Mr. Brown must be dismissed.

Dated: New York, New York
August 7, 2007

Respectfully submitted,
LEONARD F. JOY, ESQ.
Federal Defenders of New York

By: _____
CHRISTOPHER A. FLOOD, ESQ.
Attorney for Defendant
KEVIN BROWN
52 Duane Street - 10th Floor
New York, New York 10007

TO: **MICHAEL J. GARCIA, ESQ.**
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Attn: **JENNA DABBS, ESQ.**
Assistant United States Attorney