UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

          -v.-                     :
                                      07 Cr. 485 (HB)
KEVIN BROWN,                       :

          Defendant.              :

- - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION TO DISMISS THE INFORMATION**


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
     of America.


JENNA M. DABBS
Assistant United States Attorney
     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

                -v.-            :
                                        07 Cr. 485 (HB)
KEVIN BROWN,                    :

                Defendant.      :

- - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS THE INFORMATION

The Government respectfully submits this memorandum of law in response to the defendant's motion to dismiss the Information.  In support of his motion, the defendant argues that Title 42, United States Code, Section 14072(g)(3), the statutory section Brown is alleged in the Information to have violated, is unconstitutional.  Specifically, the defendant argues that (1) Section 14072 and its individual registration requirement exceeds the scope of Congress's powers to regulate under the Commerce Clause, and further that even if Congress does have authority to enact Section 14072 under the Commerce Clause, the statutory section does not contain the required jurisdictional language; (2) Section 14072 violates Brown's due process rights; and (3) Section 14072's registration requirements violate the Tenth Amendment.  For the reasons that follow, the defendant's motion should be denied in its entirety.

I.    **BACKGROUND**

The defendant, Kevin Brown, is charged in a one-count Information filed on May 30, 2007, with knowingly failing to register and update his registration as a sex offender after relocating and changing his address to another state, in violation of Title 42, United States Code, Section 14072(g)(3). (A copy of the Information is attached as Exhibit A.)  The defendant is a tier 2 registered sex offender based on his conviction, on May 6, 1977, in County Court for Union County, New Jersey, for rape and robbery, both in the first degree, in violation of New Jersey law, as a result of the sexual assault of a twenty-two-year-old woman committed in the course of an armed robbery.  (See Compl. ¶ 3, attached as Exhibit B.)  As a result of that conviction, the defendant is required under New Jersey law (NJ Statutes Annotated 2C: 7-2(a)(1)) to register as a sex offender annually until at least the year 2020.  (Id. ¶ 4.)  The New Jersey registration requirement was made effective in 1994, and all individuals incarcerated, on parole, or on probation as of the effective date or thereafter, who have been convicted at some point in time of a qualifying offense, are required under New Jersey law to register.  (Id. ¶ 5.)

As alleged in the Complaint, while incarcerated in or about September 2005 in connection with a conviction for attempted burglary in the third degree, in violation of New

Jersey state law, the defendant completed a form entitled
"Acknowledgment of Duties of Address Verification and
Registration," in which he provided an intended residence upon
release from custody at 15 Raymond Avenue in Plainfield, New
Jersey. (<u>Id</u>. ¶ 6.)  Prior to his release from custody on
December 22, 2005, the defendant completed additional
registration forms, updating the address of his intended
residence upon release.  (<u>Id</u>. ¶¶ 7a and 7b).  In addition to
providing an intended address upon release, in all of these
forms, the defendant confirmed his understanding that he must
verify his address with local authorities every year, that he
must notify local authorities if he decides to move, and that if
he moves to another state, he is subject to all laws governing
sex offender registration procedures.  (<u>Id</u>. ¶¶ 6a-6c and 7c.)

        Following his release from custody, the defendant
registered with authorities in Camden County, New Jersey,
reporting his residence as 632 Erie Street, Camden, New Jersey.
(<u>Id</u>. ¶ 8a.)  Thereafter, the defendant updated his registration,
first by registering with authorities in Cherry Hill, New Jersey,
and again by registering with authorities in Barrington, New
Jersey, when he relocated to those towns respectively.  (<u>Id</u>. ¶¶
8b-c.)  In both of these updated registration forms, the
defendant certified his understanding that if he moved to another
address, he was required to inform the authorities in both his

prior town as well as the authorities in his new location, ten days prior to the move, and thereafter to re-register in his new location. (Id. ¶¶ 8b-c.)  Shortly after the defendant registered and reported an address of 308 White Horse Pike, Room 215, Barrington, New Jersey, New Jersey authorities determined that he had left this residence and failed to report any change of address to the authorities. (Id. ¶ 8d.)  On or about June 19, 2006, a warrant was issued for the defendant's arrest, in connection with his failure to comply with reporting requirements.

On or about March 19, 2007, the defendant was arrested at 2745 8th Avenue, Apartment 3C, New York, New York, by the United States Marshals Service Regional Fugitive Task Force, pursuant to the warrant issued in Camden County, New Jersey. (Id. ¶ 10.)  Law enforcement personnel determined that the defendant had applied for public assistance in or about the Fall of 2006, listing a residence of 2745 8th Avenue, Apartment 3C, New York, New York. (Id. ¶ 9.)  In the application materials, the defendant was listed as the secondary tenant in that apartment, and another individual was listed as the primary tenant. (Id. ¶ 9.)  Law enforcement personnel interviewed the individual who was listed as the primary tenant, and she stated, in substance and in part, that she met the defendant in or about June 2006 in a park in New York, New York, that she developed a

4

romantic relationship with the defendant, and that he moved into her apartment at the end of July 2006, where he lived together with her until his arrest in March of 2007.  (<u>Id</u>. ¶ 11.)

Law enforcement personnel also spoke with two individuals employed by a dry cleaning business located at 2785 8th Avenue, New York, New York, and they stated, in substance and in part, that the defendant worked for the dry cleaning business starting in early February 2007 up until his arrest in March 2007, washing windows and picking up and delivering dry cleaning. (<u>Id</u>. ¶ 12.)  When the defendant was arrested in March 2007, he was in possession of a letter on the letterhead of Ready Willing & Able, The Doe Fund, which stated in substance and in part that the defendant had been a participant in the Ready Willing & Able program, through the Harlem I Men's Shelter, from May 5, 2006 through November 17, 2006.  (<u>Id</u>. ¶ 10.)  Law enforcement personnel verified through the New York State Division of Criminal Justice Services Sex Offender Database that the defendant did not at any time following his move to New York and prior to his arrest in March 2007 register in the State of New York as a sex offender.  (<u>Id</u>. ¶ 13.)

The defendant was charged in a complaint dated April 5, 2007 with violating Title 18, United States Code, Section 2250. He was thereafter charged in an Information filed on May 30, 2007 with violating Title 42, United States Code, Sections 14072(g)(3)

and (i)(1).  The Government produced discovery, and, on August 7, 2007, the defendant filed the instant motion to dismiss the Information.  Oral argument is scheduled for September 27, 2007, at 11:30 a.m.

## II.  **STATUTORY OVERVIEW**

On October 3, 1996, President Clinton signed into law the Pam Lychner Sexual Offender Tracking and Identification Act of 1996 (the "Act"), which amended the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act to direct the Attorney General to establish a national database at the Federal Bureau of Investigation ("FBI") to track each person who has been convicted of a criminal offense against a minor or a sexually violent offense, or who is a sexually violent predator.  42 U.S.C. § 14072(b).  The Act requires those persons who reside in a State that has not established a minimally sufficient sexual offender registration program to register with the FBI directly.  42 U.S.C. § 14072(c).  The Act further requires those individuals who are required to register under a State sexual offender registration program, and who change address to a State other than the State in which they resided at the time of the immediately preceding registration, to register within 10 days after establishing a new residence with the State in which the new residence is established.  42 U.S.C. § 14072(g)(3).  Title 42, United States Code, Section 14072(i)(1)

6

provides that a person who is required to register under Section 14072(g)(3) and knowingly fails to comply with that requirement, shall, in the case of a first offense under that subsection, be imprisoned for not more than one year.  The defendant is charged with violating Sections 14072(g)(3) and (i)(1) of the Act.

The Act amended the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, codified at 42 U.S.C. § 14071.  Section 14071, which was enacted in 1994, directed the Attorney General to establish guidelines for State programs that require persons convicted of a criminal offense against a minor or a sexually violent offense, and persons considered sexually violent predators, to register at their current addresses for specified time periods.

On July 27, 2006, President Bush signed into law the Adam Walsh Child Protection and Safety Act, which (1) contains the Sex Offender Registration and Notification Act ("SORNA"); (2) contains the federal failure to register as a sex offender statute, 18 U.S.C. § 2250(a); and (3) establishes a comprehensive national system for the registration of sex offenders.  Section 2250 states, in relevant part:

> (a) In general.--Whoever--
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for purposes of the Sex Offender Registration and Notification Act by reason of a conviction

7

> under Federal law . . . . or the law of any
> territory or possession of the United States;
> or
>
> (B) travels in interstate or foreign commerce
> . . . . and
>
> (3) knowingly fails to register or update a
> registration as required by the Sex Offender
> Registration and Notification Act;
>
> shall be fined under this title or imprisoned
> not more than 10 years, or both.

18 U.S.C. § 2250.

In addition to establishing a new federal crime, SORNA revised the national standards for sex offender registration and notification, by requiring the states to incorporate various new standards in their own laws or face a reduction in federal funding. See 42 U.S.C. § 16925(a). Under the statute, the states have three years to comply with the new standards, with possible extensions. Id. § 16924. The Adam Walsh Act and SORNA will eventually replace Sections 14071 and 14072.[1]

Both New Jersey and New York have long maintained sex offender registries and databases.[2] New Jersey has imposed

---

[1] Both Section 14071 and Section 14072 are effectively repealed the later of three years after July 27, 2006, or one year after the date on which the software described in 42 U.S.C. § 16923 is available.

[2] At the time of the Act's passage, a total of 47 states had sex offender registry programs in place. See 142 Cong. Rec. S3421 (1996).

registration requirements on sex offenders since October 1994.
The relevant portion of the New Jersey statutes states:

> A person who has been convicted, adjudicated
> delinquent or found not guilty by reason of
> insanity for commission of a sex offense
> [defined to include, among other offenses,
> aggravated sexual assault, sexual assault,
> aggravated criminal sexual contact] shall
> register as provided in subsections c. and d.
> of this section.

NJ Statutes Annotated 2C: 7-2(a)(1). Subsection (c) of this
statutory section provides, in relevant part, that "[a] person
confined in a correctional facility . . . who is required to
register shall register prior to release in accordance with
procedures established by the Department of Corrections . . .
and, within 48 hours of release, shall also register with the
chief law enforcement officer of the municipality in which the
person resides or, if the municipality does not have a local
police force, the Superintendent of State Police." Subsection
(d) of the statutory section provides, in relevant part:

> Upon a change of address, a person shall
> notify the law enforcement agency with which
> the person is registered and shall re-
> register with the appropriate law enforcement
> agency no less than 10 days before he intends
> to first reside at his new address.

NJ Code of Criminal Justice 2C: 7-2(d).

New York law similarly imposes certain registration
requirements on sex offenders, including for individuals, such
as the defendant, convicted of a sex offense in another state,

who subsequently relocate to New York.  The relevant statutory
section provides:

> A sex offender who has been convicted of a
> [felony in any other jurisdiction for which
> the offender is required to register as a sex
> offender in that jurisdiction] shall notify
> the division of the new address no later than
> ten calendar days after such sex offender
> establishes residence in this state.

New York Corr. Law § 168-k(1).  New York's registration
requirements have been in effect since January 1996.

## III. __ARGUMENT__

Defendant moves this Court to dismiss the Information
on several grounds.  The defendant argues that (1) Section 14072
and its individual registration requirement exceeds the scope of
Congress's powers to regulate under the Commerce Clause, and
further that even if Congress does have authority to enact
Section 14072 under the Commerce Clause, the statutory section
does not contain the required jurisdictional language; (2)
Section 14072 violates Brown's due process rights; and (3)
Section 14072's registration requirements violate the Tenth
Amendment.  The Government will address each of the defendant's
arguments in turn.

### A.    42 U.S.C. § 14072 DOES NOT VIOLATE THE COMMERCE CLAUSE

The defendant argues that Congress lacks the power
under the Commerce Clause to require citizens who have been
convicted of local offenses under state law to register as sex

offenders in state criminal databases.  He claims that these local offenses requiring registration have no relation to interstate activity or commerce.  The defendant further asserts that the Act does not set forth any jurisdictional basis in its text, and thus there is no nexus between the criminalized activity and interstate travel.

Article I, § 8, Clause 3 of the United States Constitution gives Congress the power "[t]o regulate Commerce with Foreign Nations, and among the several states . . . ."  Since its decision in NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1 (1937), the Supreme Court, with few exceptions, has interpreted the Commerce Clause expansively, upholding many exertions of legislative authority.  Further, statutes are presumed constitutional.  United States v. Morrison, 529 U.S. 598, 607 (2000).  A congressional enactment will only be invalidated on a plain showing that Congress exceeded its authority under the Constitution.  Id.

Section 14072 is a valid exercise of congressional authority.  "The ability to track sex offenders as they move from state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause."  United States v. Madera, 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007) (considering SORNA, which, like Section 14072, also endeavors to track sex offenders as they move from

state to state).  In <u>United States</u> v. <u>Lopez</u>, 514 U.S. 549 (1995),
the Supreme Court considered the constitutionality of the Gun-
Free School Zone Act, 18 U.S.C. § 922(q)(1)(A), which made it a
federal offense "for any individual knowingly to possess a
firearm at a place that the individual knows, or has reasonable
cause to believe, is a school zone." <u>Id</u>. at 551 (quoting 18
U.S.C. § 922(q)(1)(A) (1988 ed., Supp. V)).  The <u>Lopez</u> court held
that Congress exceeded its interstate commerce powers when it
enacted the Gun-Free School Zone Act, 18 U.S.C. § 922(q)(1)(A),
because the Act did not regulate a commercial activity, nor did
it contain a requirement that the possession of a firearm in a
school zone be connected in any way to interstate commerce.
<u>Lopez</u>, 514 U.S. at 551.

        The <u>Lopez</u> Court determined that Congress may properly
enact legislation under its commerce powers in three broad
categories: (1) to regulate use of the channels of interstate
commerce; (2) "to regulate and protect the instrumentalities of
interstate commerce, or persons or things in interstate commerce,
even though the threat may come only from intrastate activities";
and (3) to regulate activities having a substantial effect on
interstate commerce.  <u>Id</u>. at 558-59.  In holding the Gun-Free
School Zone Act an invalid exercise of Congress's commerce power,
the Court concluded that where an enactment neither purports to
regulate a use of a channel of interstate commerce, or persons or

things in interstate commerce, the proper test of constitutionality under the Commerce Clause is whether the regulated activity otherwise substantially affects interstate commerce.  Id. at 562.

Section 14072 is fundamentally different from the statute at issue in Lopez.  In order for the individual registration requirement of Section 14072(g)(3) to be violated, a sex offender must relocate from one state to another, and thereafter fail to register in the new state of residence within ten days.  Accordingly, travel between two different states – interstate travel – is required before the criminal penalties set forth in Section 14072(i) come into play.[3]  As articulated by the Supreme Court in Lopez, Congress has authority under the Commerce Clause "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities."  Id. at 558.  Section 14072 is a permissible regulation of persons in interstate commerce.

─────────────────

[3]  In addition to Section 14072(g), under which the defendant is charged, the Act also imposes criminal penalties on those individuals who are required to register in their state of residence, and knowingly fail to register in any other state in which they are employed, carry on a vocation, or are students. 42 U.S.C. § 14072(i)(2).  Just as Section 14072(g) necessarily requires interstate travel, this subsection also by its terms applies only to those persons who reside in one state, and carry on their professional or educational affairs in another state.

The defendant's argument that Section 14072 does not contain a jurisdictional nexus is unavailing. By the defendant's own characterization, "[t]he Act requires people subject to registration requirements within a state, *who change residence to a different state*, to register with the sex offender database" in the new state of residence. (Def. Brief at 3.) As discussed above, by its very terms, the Act only criminalizes failures to register by those individuals who have traveled interstate. In this regard, the Act is like SORNA, which also requires that a sex offender travel in interstate commerce before criminal penalties may be imposed. A number of courts have considered the propriety of SORNA's enactment pursuant to the Commerce Clause, and all of them have concluded that SORNA was an appropriate exercise of Congress's legislative authority under the Commerce Clause. Those cases are dispositive with respect to Section 14072. See United States v. Gonzales, No. 5:07 Cr. 27 (RS), 2007 WL 2298004, at *9 (N.D. Fla. Aug. 9, 2007) ("Congress may regulate those individuals or things that travel in interstate commerce without regard to the reason for their movement under the second prong of Lopez.") (internal citation omitted); United States v. Mason, No. 6:07 Cr. 52, 2007 WL 1521515, at *7 (M.D. Fla. May 22, 2007) (holding that SORNA is constitutional on its face "because it falls within the second category set forth in Lopez"); United States v. Hinen, 487 F. Supp. 2d 747, (W.D. Va.

14

2007) (distinguishing SORNA from the statute at issue in Lopez, observing that unlike the Lopez statute, SORNA "contains a jurisdictional element directly tied to the federal power to regulate persons who travel across state lines"); United States v. Templeton, No. 06 Cr. 291, 2007 WL 445481, at *4 (W.D. Okla. Feb. 7, 2007) (SORNA "specifically involves persons in interstate travel, which falls within the second category of activity which the Supreme Court has held that Congress may regulate under its commerce power"); see also United States v. Madera, 474 F. Supp. 2d 1257, (M.D. Fla. Jan. 16, 2007) (holding that SORNA does not violate the Commerce Clause based on the third Lopez category, explaining, "[t]he ability to track sex offenders as they move from state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause").

       The defendant argues that in order for Section 14072 to fall within the second Lopez category, which regulates people or things in interstate commerce, there must be a nexus or relationship between the misconduct and the interstate travel. It is simply not the case, as the defendant asserts, that he is charged with "moving to New York, and afterwards failing to register with New York."  By the very statutory terms of Section 14072, the defendant is charged with relocating from one state to another, and failing within ten days to register in his state of

15

new residence.  The Act permits a ten day window for the required registration for practical reasons.  That does not, however, serve to sever the interstate travel from the act of failing to register, such that the Act criminalizes, as defendant asserts, purely the failure to register in the state of new residence. Section 14072 does not purport to extend federal jurisdiction to every sex offender who has traveled interstate at some point in his or her life.  The jurisdictional nexus is precisely the reason why Congress passed Section 14072, to track sex offenders who might otherwise fall through the cracks as they move from state to state.  <u>See</u> 142 Cong. Rec. S3422 (1996).

Apparently in support of his argument that Section 14072 is lacking the required nexus, the defendant alleges that Section 14072's failings in this respect were clarified by Congress in SORNA.  The defendant does not elaborate at all on the subject of how SORNA clarified or otherwise addressed the asserted failing in Section 14072, because he cannot.  Rather, he simply asserts that SORNA "imposes registration requirements on convicted sex offenders who travel in interstate commerce." (Def. Brief at 5) (citing <u>United States</u> v. <u>Mason</u>).  As discussed above, imposing registration requirements on convicted sex offenders who travel in interstate commerce is exactly what Section 14072 does, and regulating these requirements for individuals who travel in interstate commerce is precisely within

the Commerce Clause powers of Congress to regulate persons in interstate commerce.  Moreover, the Act is rationally related to congressional authority to protect and inform the public by tracking and identifying sex offenders who travel from state to state.

**B.    THERE IS NO DUE PROCESS VIOLATION BECAUSE THE DEFENDANT WAS ON NOTICE OF HIS REGISTRATION UPDATING OBLIGATIONS**

The defendant also argues that his prosecution under Section 14072 violates his due process rights.  Specifically, the defendant claims that failure to register under Section 14072 is a specific intent crime, and the Act does not establish a reliable mechanism for providing the defendant with specific notice of his obligation to register under the Act.  This argument is wholly without merit and should be rejected.

On or about September 13, 2005, prior to his release from custody, the defendant provided an intended residence upon release in Plainfield, New Jersey, and further certified his understanding: (i) that if he moved from Plainfield to another town, he must notify both the Plainfield authorities and those in his new town of residence at least ten days before moving, and (ii) that if he moved to another State, he would be subject to any and all laws governing sex offender registration procedures. (See September 13, 2005 Acknowledgment of Duties Form, Attached as Exhibit C.)  On two subsequent occasions prior to his release, the defendant revised his intended address upon release and again

17

certified his understanding that moving to another town or state would trigger additional reporting and registration obligations.

After he was released, on or about December 29, 2005, the defendant registered with the authorities in Camden County, New Jersey.  He completed a form, which advised him of his registration obligations, including in the event of relocating. The defendant certified that he understood these obligations, and further that a failure to comply with them could subject him to criminal penalties of up to 18 months in prison.  (See December 29, 2005 Acknowledgment of Duties Form, Attached as Exhibit D.) Up until April of 2006, the defendant completed additional re-registration forms, all of which required him to sign the following certification:

> I hereby certify that I reside at the above
> address and that this address has not changed
> since I last completed a sex offender
> registration card.  I understand that if I
> move to another address I must inform the
> Local/State Police in the municipality in
> which I am registered ten (10) days prior to
> the move and must re-register with the
> Local/State Police in my new location.  I
> also understand that a failure to comply with
> these requirements could result in a criminal
> conviction pursuant to N.J.S.A. 2C-7(a).

(See, e.g., January 20, 2006 Offender Address Verification Form, Attached as Exhibit E.)

The Due Process clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend.

18

V.  The concept of Due Process contemplates notions of both notice and fair warning.  <u>See</u> <u>Lambert</u> v. <u>California</u>, 355 U.S. 225, 228 (1958) (observing that due process considerations come into play where an individual, "wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case").

In light of the record in this case, the defendant's claim that he did not have sufficient notice of his obligations to register under Section 14072 is simply absurd.  It is not the case that the law requires the defendant to have had notice that his failure to register upon relocating to New York State would constitute a violation of Section 14072 specifically.  There is no support for the defendant's assertion that Section 14072 is a specific intent crime, requiring proof of a defendant's specific intent to violate Section 14072.  The Act states only that it is a crime to "knowingly fail to comply" with the Act's requirements.  Section 14072(i)(1).  Second Circuit law is clear that the use of the word "knowingly" in a statute "signals that the statute only requires a finding of general intent for conviction."  <u>United States</u> v. <u>George</u>, 386 F.3d 383, 389 n.6 (2d Cir. 2004) (collecting cases).  The Supreme Court has defined general intent as "proof of knowledge with respect to the *actus reus* of the crime."  <u>Carter</u> v. <u>United States</u>, 530 U.S. 255, 269 (2000).

The defendant could have complied with the registration requirements of the Act simply by registering and updating his registration as required by New Jersey and New York law, of which requirements the defendant was given ample notice.  A number of courts have considered Due Process challenges to SORNA, and those courts have held that where a defendant had notice of registration obligations that derived from state law, that notice satisfies any due process concerns in connection with notice of the applicable federal law.  These cases are instructive in the context of Section 14072 as well.  See United States v. Hulen, No. 07-30004, 2007 WL 2343885, at *2 (W.D. Ark. Aug. 15, 2007) ("defendant's notice of his registration requirements under Arkansas law is sufficient to support a charge that he knowingly violated SORNA"); United States v. Torres, No. 07-50035, 2007 WL 2342884, at *2 (W.D. Ark. Aug. 15, 2007) ("defendant's notice of his registration requirements under state law is sufficient to support a charge that he knowingly violated SORNA"); Gonzales, 2007 WL 2298004, at *3-4 ("a jury could reasonably conclude that the notice allegedly imparted to Defendant by Colorado authorities of Defendant's ongoing registration duties was sufficient" to satisfy SORNA's knowledge requirement); United States v. Marcantonio, No. 07-60011, 2007 WL 2230773, at *2 (W.D. Ark. July 31, 2007) ("A defendant can violate the law by failing to register or update a SORNA imposed registration obligation or

a registration obligation imposed by another law."); <u>United States</u> v. <u>Roberts</u>, No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007) (defendant's argument that he was denied due process because he received no notification of SORNA's requirements amounts to a claim that ignorance of the law excuses non-compliance); <u>Mason</u>, 2007 WL 1521515, at *3 (notice of state registration requirement sufficient); <u>Hinen</u>, 487 F. Supp. 2d at 754 (same); <u>United States</u> v. <u>Markel</u>, No. 06-20004, 2007 WL 1100416, at *2 (W.D. Ark. Apr. 11, 2007) (no additional showing of knowledge required where defendant knew of state obligation to register and no new duties were given to him as a result of the federal provision); <u>United States</u> v. <u>Manning</u>, No. 06-20055, 2007 WL 624037, at *2 (W.D. Ark. Feb. 23, 2007) (knowledge of state law registration obligations constituted fair notice for purposes of SORNA); <u>Madera</u>, 474 F. Supp. 2d at 1262 (knowledge of state registration requirement sufficient to establish knowledge required under SORNA).[4]

---

[4]  One court has dismissed an Indictment because of a due process challenge to SORNA, finding that while the defendant had notice that he was required to register under applicable state law, he did not have notice of the more extensive criminal penalties associated with a violation of SORNA.  <u>See</u> <u>United States</u> v. <u>Barnes</u>, No. 07 Cr. 187 (LBS), 2007 WL 2119895, at *3 (S.D.N.Y. July 23, 2007).  The court's concern in <u>Barnes</u> about notice of applicable penalties does not apply in this case. Section 14072 imposes a maximum penalty of one year of imprisonment for a first time offender.  The defendant's notice of New Jersey's registration requirements included confirming his understanding that he faced a possible penalty of 18 months' imprisonment for noncompliance – a punishment in excess of what

Some courts have further observed that sex offenders in particular should be assumed to be on notice of legal obligations because their activities are subject to regulation.  See, e.g., Roberts, 2007 WL 2155750, at *2 ("Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected [to] keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation . . . .  Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.").  Such an extension, however, is not required in this case.  The defendant does not contest his knowledge of the applicable state law registration requirements.  Rather, he claims that he did not have specific notice that his conduct violated the requirements of the Act, in addition to the applicable state law requirements to which he was subject.  The defendant misconstrues the Act's knowledge requirement.

_____

the Act permits.

**C.   THE STATUTE DOES NOT ENCROACH UPON STATE POWER OR VIOLATE THE 10TH AMENDMENT**

Finally, the defendant argues that the Act is an unconstitutional exercise of federal power over the states, in violation of the Tenth Amendment, because it requires individuals to register in state-run sex offender registries.  The defendant further asserts that the Act's state registration requirement, 42 U.S.C. § 14072(g)(4), forces state officials to assist in administering federal law and is therefore prohibited by the Tenth Amendment.[5]  These arguments are without merit.

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  According to the Supreme Court, the Tenth Amendment "confirms that the power of the Federal Government is subject to limits

---

[5]  The relevant portion of the Act states:

> Any time any State agency in a State with a minimally sufficient sexual offender registration program . . . is notified of a change of address by a person required to register under such program within or outside of such State, the State shall notify –
>
> (A) the law enforcement officials of the jurisdiction to which, and the jurisdiction from which, the person has relocated; and
>
> (B) the FBI.

42 U.S.C. § 14072(g)(4).

that may, in a given instance, reserve power to the States." New
York v. United States, 505 U.S. 144, 157 (1992).  The Supreme
Court has held that Congress may not "commandeer the legislative
processes of the States by directly compelling them to enact and
enforce a federal regulatory program," Id. at 161 (quoting Hodel
v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 288
(1981)), and further that Congress "cannot circumvent that
prohibition by conscripting" state officers directly to
administer or enforce a federal regulatory program.  Printz v.
United States, 521 U.S. 898, 935 (1997).  Congress may, however,
"urge a State to adopt a legislative program consistent with
federal interests," by attaching conditions on the receipt of
federal funds, or by giving the State the choice of regulating a
given activity according to federal standards, or having state
law pre-empted by federal regulation.  New York v. United States,
505 U.S. at 166-67; see also Federal Energy Regulatory Commission
v. Mississippi, 456 U.S. 742, 766 (1982); United States v.
Milstein, 401 F.3d 53, 68 (2d Cir. 2005).

     The Act neither commandeers the legislative processes
of the states nor conscripts state officers to administer or
enforce a federal regulatory program.  The Act requires the
Attorney General to establish a national database at the FBI to
track the whereabouts and movement of certain sex offenders.  The
Act also imposes a registration requirement on those individuals

who reside in states that have not established their own sex
offender registration programs, to register with the FBI
directly.  Finally, the Act requires those sex offenders who
travel interstate to register with state and federal authorities
within ten days.  None of these directives runs afoul of the
Tenth Amendment.

Congress can certainly direct the Attorney General to
establish a national tracking database.  That directive does not
operate in any way on the states nor on any state actors.  The
requirement that individuals who reside in states without sex
offender registration programs instead register with the FBI
directly similarly does not run afoul of Tenth Amendment
considerations.  Indeed, it is even a step removed from the sort
of regulation in the alternative that the Supreme Court has
upheld as constitutionally appropriate.  See New York v. United
States, 505 U.S. at 173-74 ("Where federal regulation of private
activity is within the scope of the Commerce Clause, we have
recognized the ability of Congress to offer States the choice of
regulating that activity according to federal standards or having
state law pre-empted by federal regulation.").  And by requiring
individuals who travel in interstate commerce to register in
their state of new residence within ten days, the Act simply
requires the defendant in this case to meet an obligation already
imposed by the laws of both New York and New Jersey.  Such a

25

requirement cannot be said to deprive the states of their right to legislate in this area.  See, e.g., United States v. Rosario, 386 F.3d 166, 172 (2d Cir. 2004) (requiring defendant as condition of supervised release to "meet his state-imposed obligation" to register as a sex offender "involves no intrusion on state authority like requiring a state to initiate the process of withdrawing the means by which it regulates a profession"). "The notion that a federal entity may attach negative consequences to a failure to comply with state or local law is not a novel one." United States v. A-Abras, Inc., 185 F.3d 26, 32-33 (2d Cir. 1999) (holding that condition of supervised release requiring defendant to pay applicable municipal fine did not violate the Tenth Amendment because "the challenged condition does not compel or rely upon action or enforcement by the City as such, but rather requires appellant to act in compliance with the fine already imposed by the City under its existing scheme for enforcement").

        The only provision defendant highlights that requires action of any kind from a state actor is Section 14072(g)(4). Section 14072(g)(4) of the Act requires the states, upon being notified of a sex offender's change of address, to notify law enforcement officials "of the jurisdiction to which, and the jurisdiction from which, the person has relocated," as well as the FBI.  This provision similarly does not present a Tenth

Amendment problem.  It does not compel the states to enact any
legislation or to enforce or administer any federal regulatory
program.  Rather, this provision imposes on state actors the
limited responsibility of sharing address information provided to
them by sex offenders with law enforcement personnel in other
states and in the federal government.

        The Supreme Court has observed the distinction between
laws which require state actors to provide information to the
federal government on the one hand, and those that require state
actors to participate in the administration and enforcement of a
federal program on the other.  Printz, 521 U.S. at 918
(contrasting those laws "which require only the provision of
information to the Federal Government" from those which "forc[e]
participation of the States' executive in the actual
administration of a federal program").  Such information sharing
requirements have consistently been upheld as consistent with the
federal system and the Tenth Amendment.  See, e.g., Freilich v.
Board of Directors of Upper Chesapeake Health, Inc., 142 F. Supp.
2d 679, 696-97 (M.D. Pa. 2001) (observing that the mere
requirement that states forward information to a national data
bank that the state already collects under its own state laws has
"never been held to violate the Tenth Amendment").  "A system of
dual sovereignties cannot work without informed, extensive, and
cooperative interaction of a voluntary nature between sovereign

systems for the mutual benefit of each system." <u>City of New York</u> v. <u>United States</u>, 179 F.3d 29, 35 (2d Cir. 1999) (holding that two statutory sections prohibiting state and local governments from limiting their employees in the voluntary provision of information about the immigration status of aliens to the Immigration and Naturalization Service did not fun afoul of the Tenth Amendment).

In short, Section 14072 neither compels state officials to legislate according to federal imperatives, nor requires those officials directly to enforce or administer a federal program. Accordingly, the Act does not run afoul of the Tenth Amendment.

## IV.  <u>CONCLUSION</u>

For these reasons, this Court should deny the defendant's motion to dismiss the Information in its entirety.

Dated:    New York, New York
          August 28, 2007

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney


                    By:    ___/s/ Jenna M. Dabbs_____
                           JENNA M. DABBS
                           Assistant United States Attorney
                           Tel: (212) 637-2212
                           Fax: (212) 637-2527

<u>AFFIRMATION OF SERVICE</u>

JENNA M. DABBS, pursuant to Title 28, United States Code, Section 1746, hereby affirms under penalty of perjury:

That I am an Assistant United States Attorney in the office of Michael J. Garcia, United States Attorney for the Southern District of New York.

That on August 28, 2007, I electronically filed and caused a true and correct copy of the foregoing Government's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss the Information to be served by hand delivery on:

> Peggy Cross, Esq.
> Federal Defenders of New York, Inc.
> 52 Duane Street, 10th Floor
> New York, New York 10007

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:    New York, New York
          August 28, 2007


                    /s/ Jenna M. Dabbs
                    JENNA M. DABBS