UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x

UNITED STATES OF AMERICA                    :
                                            :
          - v. -                            :                    **07 Cr. 485 (HB)**
                                            :
**KEVIN BROWN,**                            :
                                            :
          Defendant.                        :
                                            :
------------------------------------------------------x


## DEFENDANT KEVIN BROWN'S REPLY MEMORANDUM
## IN SUPPORT OF HIS MOTION TO DISMISS THE INFORMATION

This Reply Memorandum of Law is respectfully submitted on behalf of defendant KEVIN

BROWN in further support of his motion to dismiss the Information.


**I.    THE ACT IS AN UNCONSTITUTIONAL EXERCISE OF CONGRESSIONAL POWER BECAUSE IT SEEKS TO REGULATE PEOPLE AND CONDUCT UNRELATED TO INTERSTATE COMMERCE**

The government asserts that 42 U.S.C. § 14072(g) ("the Act") "is a permissible regulation

of persons in interstate commerce." Gov't Brief at 13. Yet there is nothing in the Act that limits its

reach to persons in interstate commerce. Rather, it purports to regulate persons subject to entirely

local registration requirements after they have moved to a new state. Because the Act lacks a nexus

between the movement across state lines and the regulated conduct, which is otherwise beyond

Congress's power to regulate, it exceeds Congress's constitutional authority.

Under the government's theory, the mere fact that a person has crossed a state line would

be enough to federalize his future state crimes, at least for the next ten days, even if those crimes

have no relation to interstate commerce or his move across state lines. Applying this theory to the statutes struck down in <u>Lopez</u> and <u>Morrison</u> reveals its inherent flaw. For example, a hypothetical Gun Free School Zone Act that prohibited the possession of guns in school zones by individuals who less than ten days ago had established a new residence in "a State other than the State in which the person resided at the time . . . immediately preceding" the gun possession, would not have satisfied the Supreme Court's concern that Gun Free School Zone Act "neither regulate[d] a commercial activity nor contain[ed] a requirement that the possession be connected in any way to interstate commerce." <u>United States v. Lopez</u>, 514 U.S. 549, 551 (1995). Similarly, Congress could not have saved the Violence Against Women Act by providing civil remedies to women who had moved from one state to another (or against potential defendants who had similarly moved). The <u>Morrison</u> Court reminded us of "one of the few principles that has been consistent since the [Commerce] Clause was adopted. The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." <u>Morrison</u>, 529 U.S. at 617-18. Where, as in Mr. Brown's case, the conduct Congress seeks to regulate traditionally falls within the province of the states, there must be a link between the conduct and interstate commerce.

As the Supreme Court's opinion in <u>Jones v. United States</u>, 529 U.S. 848 (2000), makes clear, the relation to interstate commerce must be more than simple state line crossing. The federal arson statute at issue in <u>Jones</u> required that the property that was burned had been used in interstate commerce or in any activity affecting interstate commerce. The Court stressed the importance of this limiting language, indicating that without it, the statute would have exceeded Congress's Commerce powers. The <u>Jones</u> Court refused to interpret the statute so that it would reach buildings

with "merely a passive, passing, or past connection to commerce," id. at 855, because doing so would render "traditionally local criminal conduct . . . a matter for federal enforcement," and would therefore raise constitutional questions about whether the statute exceeded Congress's authority. The fact that the materials used to build and heat the house in Jones had crossed state lines was not enough to make the house one used in or affecting interstate commerce. Similarly, the fact that an individual has crossed state lines is not enough to render his purely local crime a matter of federal enforcement.

Nothing in the SORNA-related opinions relied on by the government alters this analysis. Unless it requires a link between movement across state lines and the local criminal conduct it seeks to regulate, Congress has exceeded its Commerce Clause power. Congress's power to enact legislation to effectuate its goals, no matter how laudable or politically popular they may be, is circumscribed by the Constitution. The Act exceeds that power.

## II.    THE ACT VIOLATES MR. BROWN'S DUE PROCESS RIGHT TO FAIR NOTICE

In addition to exceeding Congress's powers under the Commerce Clause, the Act violate's Mr. Brown's due process right to fair notice. The Act does not establish any mechanism for notifying an individual that he is subject to a federal requirement that he register in his new state within ten days. In Mr. Brown's case, the forms he was required to sign specifically informed him that, if he moved, he would be required to register with his new local/state government and that the failure to do so would subject him to criminal penalties in New Jersey. He was not given notice that federal law required him to register in his new state within ten days.

## III.    THE ACT IS AN UNCONSTITUTIONAL EXERCISE OF FEDERAL POWER PROHIBITED BY THE TENTH AMENDMENT

The government contends that, the Tenth Amendment notwithstanding, Congress has the ability to require individuals to register in state-run directories and to require that state employees take certain actions, pursuant to federal law, when certain individuals register. The entire premise of the government's argument, however, presupposes that Congress has the authority to regulate the registration of sex offenders not otherwise involved in interstate commerce. As discussed in Part I, *supra*, the statute's application to individuals who previously have relocated to a new state is insufficient to bring the Act within Congress's Commerce Clause powers.

With respect to whether the Tenth Amendment prohibits Congress from requiring individuals to register in state-run directories, the cases cited by the government are inopposite. They stand for the proposition that where the federal government exercises legitimate authority, it may require compliance with state laws. For example, where a federal court properly exercises jurisdiction over a criminal defendant, it may require that defendant to comply with state laws or state registration requirements. They shed no light on whether the imposition of such a requirement itself falls within Congress's enumerated powers. Because the Act does not require a link between an individual's move across state lines and conduct Congress sought to regulate, it exceeds Congress's powers.

In addition to exceeding Congress's enumerated powers, the Act "invades the province of state sovereignty reserved by the Tenth Amendment" because it forces state actors to assist in the administration of a federal program. See New York v. United States, 505 U.S. 144, 156 (1992). The Act requires state actors to notify the federal government and the government of the state to which its registered sex offenders announce their intention to move, thus impermissibly conscripting

-4-

the state actors into assisting the federal government.

The government's reliance on the Second Circuit's opinion in <u>City of New York v. United States</u>, 179 F.3d 29 (2d Cir. 1999), is misplaced. The statute at issue in <u>New York</u> was different from the Act before this Court in two fundamental ways. First, it was on the subject of aliens, an area in which Congress has plenary legislative power and the ability to preempt state law. Id. at 34. Second, it did not require state actors to provide any information to the federal government. It simply prohibited a prohibition on the voluntary provision of information. The Second Circuit may be correct that our system of dual sovereignty depends on "informed, extensive, and cooperative interaction of a voluntary nature" between states and the federal government. See <u>id.</u> at 35. While <u>voluntary</u> cooperation between a state and the federal government may be of mutual benefit to both, the federal government cannot force the states to cooperate with it in an area regarding which the Constitution reposed responsibility with the states.

## CONCLUSION

Because the Act is unconstitutional, the Information against Mr. Brown must be dismissed.

Dated: New York, New York
       September 12, 2007

                         Respectfully submitted,
                         LEONARD F. JOY, ESQ.
                         Federal Defenders of New York

By: _____
                         **PEGGY M. CROSS, ESQ.**
                         Attorney for Defendant
                         **KEVIN BROWN**
                         52 Duane Street - 10th Floor
                         New York, New York 10007

TO:    **MICHAEL J. GARCIA, ESQ.**
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Attn:   **JENNA M. DABBS, ESQ.**
Assistant United States Attorney