UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                          :

**UNITED STATES OF AMERICA,**             :

                                          :      **07 Cr. 485 (HB)**

           - against -                       :

                                          :      **OPINION & ORDER**

**KEVIN BROWN,**                              :

          **Defendant.**                    :

                                          :
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:**

## I.    BACKGROUND

On May 30, 2007, Defendant was charged in a criminal information with violating 42 U.S.C. §§ 14072(g)(3) of the Pam Lychner Sexual Offender Tracking and Identification Act of 1996 (the "Act").[1] This federal statute imposes criminal penalties on any person, required to register as a sexual offender under a state registration program, who changes his or her residence to one in another state and fails to register with the FBI and in the new state of residence within 10 days. Brown is subject to 42 U.S.C. § 14072 based on an earlier conviction that required Defendant to register as a tier 2 sexual offender, and is further required to re-register annually until at least 2020. Compl. ¶¶ 3 and 4.

More recently, Defendant was incarcerated at the Riverfront State Prison in New Jersey following a conviction for attempted robbery in the third degree. Shortly before his release in December 2005, and based on his status as a tier 2 sexual offender, Defendant completed a form entitled "Acknowledgement of Duties of Address Verification and Registration." In this form, Defendant provided an intended residence upon release in Plainfield, New Jersey, and confirmed

---

[1] § 14072(g)(3) provides that Individual Registration requires the following:

> A person required to register [as a sex offender under section 14072] or under a State sexual offender registration program, including a program established under section 14071 of this title, who changes address to a State other than the State in which the person resided at the time of the immediately preceding registration shall, not later than 10 days after that person establishes a new residence, register a current address, fingerprints, and photograph of that person, for inclusion in the appropriate [sex offender registry] database, with—(A) the FBI; and (B) the State in which the new residence is established.

his understanding that, *inter alia*, he must annually verify his address with the Plainfield police department and if he moved to another state he would be subject to "any and all laws governing sex offender registration procedures."[2] *Id*. See also, Gov't.'s Mem. in Opp. to Def.'s Mot. to Dismiss. Ex. C.

After his release, Defendant moved and on each occasion he updated his registration: first with the authorities in Camden County, New Jersey, and then later when he moved to Cherry Hill, New Jersey and again when he moved to Barrington, New Jersey. Compl. ¶ 8a-8c. Each time, Defendant confirmed his understanding of his on-going registration requirements. In April 2006, New Jersey authorities determined that Defendant had left his Barrington address—the last address from which he had registered—and had failed to report any new residence. As a consequence, a warrant for his arrest was issued on June 19, 2006.

The Defendant was arrested in March 2007. As part of their investigation, law enforcement personnel determined that Defendant had applied for public assistance in the Fall of 2006, listing a residence in New York City.[3] Furthermore, law enforcement personnel spoke with employees of a New York City dry cleaning business, who stated that Defendant had begun working there in February 2007. Finally, when Defendant was arrested, authorities found a letter in his possession which indicated that during the period from May through November 2006 Defendant had participated in the Ready, Willing, & Able work placement program through the Harlem I Men's shelter.

Following his arrest, Defendant was charged in a criminal complaint dated April 5, 2007 with violating 18 U.S.C. § 2250.[4] As described above, Defendant was subsequently charged in a

---

[2] Following the execution of this form and prior to his release on December 22, 2005, Defendant completed additional registration forms, each time changing the intended residence upon release. Compl. ¶¶ 7a and 7b. Again, each time he did so, Defendant acknowledged his duty to re-register annually as well as the fact that should he decide to move to another state he would be subject to all sex offender registration laws. *Id*. at ¶ 7c.

[3] On the public assistance application materials, Defendant was listed as the secondary occupant of the given address. Compl. ¶ 9 Authorities interviewed the individual listed as the primary resident, who stated that she had met Defendant in June 2006 in New York City, that Defendant had subsequently moved into her apartment with her the following month, and that he continued to live there up until the time of his arrest. *Id*. at ¶ 11.

[4] 18 U.S.C. § 2250 imposes penalties on sexual offenders who fail to comply with the Sexual Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16902 *et seq*., and provides in pertinent part as follows that [Whoever]:
   (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country and
   (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and

criminal information filed on May 30, 2007 with violating 42 U.S.C. § 14072(g)(3). The government produced discovery and Defendant filed the instant motion to dismiss the information on August 7, 2007.[5]

## II. DISCUSSION

Defendant makes three arguments in support of his motion to dismiss the criminal information: (1) that § 14072 violates the Commerce Clause of the U.S. Constitution; (2) that § 14072 violates his Due Process rights; and (3) that § 14072 violates the Tenth Amendment. Each of these arguments will be discussed in turn.

### A. The Act Does Not Violate the Commerce Clause

Defendant's first argument is that the Act exceeds Congress' power to regulate under the Commerce Clause. Article I, § 8, Clause 3 of the United States Constitution provides that Congress has the power "[t]o regulate Commerce with Foreign Nations, and among the several states…." Recently the Supreme Court identified:

> three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce….Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.* those activities that substantially affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (internal citations omitted).

In *Lopez*, the Court considered the constitutionality of the Gun-Free School Zone Act, 18 U.S.C. § 922(q)(1)(A), which made it a crime "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id.* at 551. Because that statute neither regulated a commercial activity, nor contained a requirement that the

---

    Notification Act;
     shall be fined under this title or imprisoned not more than 10 years, or both.

[5] The statutory provisions that form the basis for the criminal complaint and the criminal information—18 U.S.C. § 2250 and 42 U.S.C. § 14072(g)(3), respectively—are similar in that they impose penalties on sexual offenders who go between states and fail to update their registration. When asked by the Court at oral argument on October 10, 2007 why the government had charged Defendant with both, the government indicated that because SORNA was enacted after Defendant's move from New Jersey to New York the charge of violating 18 U.S.C. § 2250 might be susceptible to an *ex post facto* challenge. Tr. at 13-14.

possession of a firearm in a school zone be connected to interstate commerce, the Court held that the statute exceeded Congress' commerce authority. Id.  Subsequently, in *United States v. Morrison*, the Court considered the constitutionality of 42 U.S.C. § 13981, a section of the Violence Against Women Act of 1994 that provided a federal civil cause of action for victims of gender-motivated violence. 529 U.S. 598 (2000).  Using the analytical framework of *Lopez*, the Court struck down § 13981 because "[g]ender motivated crimes of violence are not, in any sense of the phrase, economic activity," and because the statute contained "no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." *Id*. at 613.

Defendant points to this reasoning to support his argument that this Court dismiss the information.  However, the Act at issue here is fundamentally different from the Gun-Free School Zone Act and § 13981 of the Violence Against Women Act.  In order for there to be a violation of the Act's individual registration requirement, an individual must change residence from one state to another.  The Act does not impose criminal penalties on individuals who relocate intrastate and fail to register; instead, it only imposes penalties on those who relocate to another state and subsequently fail to register in their new state of residence.  Thus *Lopez* and *Morrison* are inapposite.

Instead, SORNA, which likewise requires that sexual offenders travel interstate and fail to register, is more appropriate and there any number of courts have considered Commerce Clause challenges and concluded that SORNA is a valid exercise of Congress' commerce power. *See*, *e.g.*, *United States v. Hinen*, 487 F. Supp. 2d 747, 757 (W.D. Va. 2007) (upholding SORNA and observing that it "contains a jurisdictional element directly tied to the federal power to regulate persons who travel across state lines"); *United States v. Mason,* 510 F. Supp. 2d 923; 2007 U.S. Dist. LEXIS 37122 at *20-*21. (M.D. Fla. 2007) (Congress may regulate those individuals or things that travel in interstate commerce without regard to the reason for their movement); *United States v. Templeton,* 2007 U.S. Dist. LEXIS 8930 at *11 (upholding SORNA because it "specifically involves persons in interstate travel, which falls within the second category of activity which the Supreme Court has held that Congress may regulate under its commerce power"); *United States v. Gonzales*, 2007 U.S. Dist. LEXIS 58035 (N.D. Fla. Aug. 9, 2007).

Movant argues that SORNA applies to an individual who "travels in interstate . . . commerce,"[6] whereas the Act at issue requires only interstate travel and contains no explicit invocation of "interstate commerce."[7] The import of this, Defendant argues, is that without an express requirement that the travel be "in interstate commerce," the second category of *Lopez*— holding that Congress may regulate "persons or things in interstate commerce"—is inapplicable here and the statute must fail. The fact is that even if this argument was persuasive, other courts have found SORNA to be valid under the third *Lopez* category. For example, in *United States v. Madera*, the court noted that the purpose behind the enactment of SORNA was to protect the public from sexual offenders, and found that "the ability to track sex offenders as they move from state to state, and continue to identify these sex offenders in their new residences, is enough to fall under the veil of the Commerce Clause."[8] 474 F. Supp. 2d 1257, 1265 (M.D. Fla. 2007). Likewise, the Act here was enacted in response to the concern that sexual offenders were "falling through the cracks" by moving from state to state and failing to update their registries. *See* 142 Cong. Rec. S8777 (1996); *see also*, Tr. at 12. The similarity of purpose behind both SORNA and the Act in question is thus telling.

Finally, Defendant argues that the Act exceeds the commerce power because Congress has made no explicit findings to show a relation between the activity covered by the Act and interstate commerce. However, this argument ignores the great weight of authority to the effect that "[w]hile congressional findings are certainly helpful in reviewing the substance of a congressional statutory scheme, . . . the absence of particularized findings does not call into question Congress authority to legislate." *Raich*, 545 U.S. at 21; *see also*, *Morrison*, 529 U.S. at 612; *Lopez*, 514 U.S. at 562-63. Thus, the absence in the Act of specific findings by Congress on this point hardly requires this Court to find the Act invalid.

In the last analysis, then, it is clear that the Act does not exceed Congress' authority under the Commerce Clause, and Defendant's argument to the contrary must fail.

---

[6] *See supra*, note 4 (citing language of 18 U.S.C. § 2250).

[7] *See supra*, note 1 (citing language of 42 U.S.C. § 14072(g)(3)).

[8] Moreover, as the Supreme Court made clear in Gonzales v. Raich, "[i]n assessing the scope of Congress' authority under the Commerce Clause, the task before a court is a modest one. It need not determine whether the regulated activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." 545 U.S. 1, 22 (2005). The court in Madera found that the "rational basis test is clearly met through Congress's desire to track sex offenders as they move between states, in order to promote the public safety." 474 F. Supp. 2d at 1265.

**B. The Act Does Not Violate Defendant's Due Process Rights**

Defendant's second argument is that the Act violates the principles of notice, fair warning, and foreseeability encompassed in the Due Process Clause of the Fifth Amendment, which provides that "[n]o person shall…be deprived of life, liberty, or property, without due process of law…." U.S. Const. amend. V. *See Lambert v. California*, 355 U.S. 225, 228 (1958) (noting that due process is implicated when a person, "wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case"). In particular, Defendant avers that failure to register under the Act is a specific intent crime.[9] "Because the Act does not establish a reliable mechanism for providing specific notice of [the] obligation to register under the Act," reasons Defendant, he "cannot be said to have knowingly failed to comply." Def.'s Mem. in Support of Mot. to Dismiss 2. Moreover, Defendant emphasizes that he was never given any actual notice of the existence of the Act or of the requirements it imposed on him. Thus, Defendant argues that his prosecution should be barred on this ground alone.

There are no cases that have directly addressed such a due process challenge to the Act at issue here. However, a number of courts have considered Due Process challenges to SORNA and held that when a defendant has notice of state registration requirements, that notice satisfies due process with regard to the federal registration law as well. *See, e.g. United States v. Hulen*, 2007 U.S. Dist LEXIS 60133 (W.D. Ark. Aug. 15, 2007); *United States v. Gonzales*, 2007 U.S. Dist. LEXIS 58035 (N.D. Fla. Aug. 9, 2007); *United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007).

Here, there is no dispute that Defendant had ample notice of his state registration requirement—as described above, before his release from prison in December 2005 he completed several "Acknowledgement of Duties of Address Verification and Registration" forms in which he confirmed his understanding of his obligation to register annually and that, if he

---

[9] 42 U.S.C. § 14072(i)(1) provides that any person required to register who "knowingly fails to comply" shall be imprisoned for up to one year for a first offense, and up to 10 years for subsequent offenses. However, this Circuit has recently explained that use of the word "knowingly" in a statute "signals that the statute only requires a finding of general intent for conviction." *United States v. George*, 386 F.3d 383, 389 n. 6 (2d Cir. 2004) (collecting cases illustrating that "the criminal statutory *mens rea* term 'knowingly' has attained a largely settled interpretation" as requiring only general intent). The Supreme Court has defined general intent as "proof of knowledge with respect to the *actus reus* of the crime." *Carter v. United States*, 530 U.S. 255, 269 (2000).

moved to another state, he would be subject to all registration laws. In addition, Defendant completed additional registration forms on several subsequent occasions in which he made similar acknowledgements that he was aware of his reporting requirements. In light of the above-cited case law, it is clear that Defendant cannot argue that his due process rights are violated by § 14072's registration requirement.[10]

### C. The Act Does Not Violate the Tenth Amendment

Defendant's third argument is that the Act violates the Tenth Amendment because it is an unconstitutional exercise of federal power. The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. As presented by Defendant, this argument has two components—first, that the Act impermissibly requires individuals to register in state sex offender registries (the "individual registration" issue); second, that the Act impermissibly requires state officials to assist in the administration of federal law by reporting registrant information to the federal government (the "state reporting" issue).

As to the individual registration issue, the Act mandates that any person who is required to register with a sex offender registry in one state to, upon moving to another state, register with both the FBI and the new state. Defendant contends that the ability to require individuals to register with state-run sexual offender registries is not within Congress' enumerated powers. Def.'s Reply Mem. in Support of Mot. to Dismiss 4. However, as already shown *supra* the Act is grounded in Congress' Commerce power; thus, Defendant's argument as to the individual registration issue must fail.

Furthermore, those individuals required by the Act to register with state sexual offender registries are already obligated to register pursuant to state registration laws. As this Circuit has noted, "[t]he notion that a federal entity may attach negative consequences to a failure to comply with state or local law is not a novel one." *United States v. A-Abras, Inc*., 185 F.3d 26, 32-33 (2d Cir. 1999) (holding that a condition of supervised release requiring defendant to pay applicable

---

[10] Moreover, some courts considering due process challenges have observed that sexual offenders in particular should be charged with notice because their activities are subject to regulation. *See, e.g. United States v. Roberts*, No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007) ("Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so.").

municipal fines did not violate the Tenth Amendment because the municipal code itself already required such payment). *See also, United States v. Rosario*, 386 F.3d 166, 172 (2d Cir. 2004) (stating that requiring defendant to "meet his state-imposed obligation" to register with a state sexual offender database "involves no intrusion on state authority").[11]

As to the state reporting issue, the Act provides:

> Any time any State agency in a State with a minimally sufficient sexual offender registration program…is notified of a change of address by a person required to register under such program within or outside of such State, the state shall notify—(A) the law enforcement officials of the jurisdiction to which, and the jurisdiction from which, the person has relocated; and (B) the FBI. 42 U.S.C. § 14072(g)(4).

Defendant argues that this requirement is an impermissible exercise of federal power as well because it "invades the province of state sovereignty reserved by the Tenth Amendment" by forcing state actors to assist in the administration of a federal program. *New York v. United States*, 505 U.S. 144, 156 (1992).

The Act does not compel states to enact a state sexual offender registration law; rather, it directs the Attorney General to establish a national database at the FBI.[12] Nor does the state reporting requirement rise to the level of enforcing federal law; rather, it merely requires state officials to provide information regarding sexual offenders—information that the state officials will typically already have through their own state registries—to the federal government. Indeed, the Court in *Printz* noted that federal laws "which require only the provision of information to the Federal Government, do not involve the precise issue before us here, which is the forced participation of the States' executive in the actual administration of a federal program." *Printz v. United States*, 521 U.S. 898, 918 (1997).

While the Court did not give its express imprimatur to information-sharing laws in *Printz*, explaining that such laws were outside the scope of the inquiry before them, the fact that the Court did make the distinction at the very least renders ineffective Defendant's reliance on that decision in support of his motion.[13] Furthermore, other courts have found such information-

---

[11] Indeed, Defendant as much as concedes that if the Act is validly grounded in the Commerce Clause, the individual registration requirement is legitimate, recognizing the principle that "where the federal government exercises legitimate authority, it may require compliance with state laws." Def.'s Reply Mem. in Support of Mot. to Dismiss 4.

[12] *See* 42 U.S.C. § 14072(b).

[13] As a related matter, there is also the question of whether Defendant is even the proper party to challenge the Act with relation to the reporting requirement imposed on state officials—in *Printz*, the Court expressly refused to consider the constitutionality of the statute at issue in relation to potentially

sharing provisions to be a natural and appropriate feature of our system of dual sovereignty. *See, e.g., Freilich v. Board of Directors of Upper Chesapeake Health, Inc.*, 142 F.Supp.2d 679, 696-97 (M.D. Pa. 2001) (upholding a federal reporting requirement that "merely requires the state to forward information to a national data bank that the state already collects on its own under its own state laws," and observing that such a requirement "has never been held to violate the Tenth Amendment").

In sum, because the individuals subject to the Act are already required to register pursuant to state registration laws, and because the Act only requires states to provide information rather than administer or enforce a federal program, the Act does not violate the Tenth Amendment.

### III. CONCLUSION

In conclusion, the arguments that Defendant advanced in support of his motion are unavailing. First, the purpose of the Act and the fact that an individual must travel in interstate commerce before the Act imposes criminal penalties is sufficient to find a valid exercise of federal authority under the Commerce Clause. Second, Defendant's undisputed notice of his obligation to register under state law is sufficient to ignite his concomitant obligations under the Act. Third, neither the individual registration requirement nor the state reporting requirement contained in the Act violate the Tenth Amendment.

For the foregoing reasons, Defendant's Motion to Dismiss the Information is DENIED. The Clerk is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**December 12, 2007**

_____
U.S.D.J.

---

affected parties who were not before the Court. 521 U.S. at 935. In other words, whether the Act impermissibly imposes upon state actors is a question more appropriately raised by the state officials themselves, not the Defendant.

9